**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **GEORGE PIAZZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 6:26-cv-2574** |
| **v.** | ) | |
| | ) | |
| **CITIBANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, GEORGE PIAZZA, by and through his attorneys, SMITHMARCO, P.C., and for his complaint against the Defendant, CITIBANK, N.A., Plaintiff states as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for all damages allowable under the Electronic Funds Transfer Act (hereinafter, "EFTA"), 15 U.S.C. §1693, et seq.

## II. JURISDICTION & VENUE

2. Jurisdiction arises under the EFTA, 15 U.S.C. §1693m.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III. PARTIES

4. GEORGE PIAZZA, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Orlando, County of Orange, State of Florida.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

6. Plaintiff maintained two accounts with Defendant Citibank: a checking account (hereinafter, "Plaintiff's Citibank Checking Account") and a savings account (hereinafter, "Plaintiff's Citibank Savings Account"). These accounts may be referred to collectively as "Plaintiff's Citibank Accounts."

7. At all relevant times, Plaintiff's Citibank Accounts were established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

8. At all relevant times, Plaintiff's Citibank Accounts were each an "account" as that term is defined by 15 U.S.C. §1693a(2).

9. CITIBANK, N.A., (hereinafter, "Defendant") is a business entity that conducts business within the State of Florida.

10. At all relevant times, Defendant was a bank that held Plaintiff's Citibank Accounts.

11. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. At all relevant times, Defendant was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

13. At all relevant times, unknown recipients identified as Shane Richard and Willie Ann Billington received funds from Plaintiff's Citibank Accounts, which

were transferred to these recipients via an electronic terminal, telephonic instruction or computer or magnetic tape after unknown persons or entities instructed Defendant to transfer funds from Plaintiff's Citibank Accounts.

## IV. THE ELECTRONIC FUND TRANSFERS ACT

14. Congress enacted the federal Electronic Fund Transfers Act in 1978, decades before banks provided direct electronic access to wire transfer networks via online or mobile banking, to clarify the rights and liabilities of consumers, banks, and other intermediaries for electronic transfers of money. The EFTA and its implementing Regulation E ("Reg. E") are landmark protections that shift liability for unauthorized transfers from consumers to banks.

15. The EFTA governs any "electronic fund transfer," referred to herein as an "EFT," which it defines as any transfer of funds that is initiated through an electronic terminal, telephonic instrument, or computer that orders, instructs, or authorizes a financial institution, such as Defendant, to debit or credit an account. 15 U.S.C. § 1693a(7). Everyday examples of EFTs include purchases made using debit cards, ATM withdrawals, direct deposits, online bill payments, peer-to-peer payments using mobile apps, transfers among consumers' accounts, and all other debits or credits initiated by computer or mobile device. *Id*; 12 C.F.R. § 1005.3(b)(1).

16. The EFTA and Reg. E protect consumers from unauthorized EFTs and other errors. EFTs are unauthorized when they do not benefit consumers and are made by persons who are not the consumers or other authorized users. 15 U.S.C. § 1693a(12). When scammers fraudulently infiltrate online or mobile banking to

electronically execute transactions that cause banks, such as Defendant, to move money into or out of consumers' accounts, these are unauthorized EFTs.

17. The EFTA's consumer protections for unauthorized EFTs adhere to a three-tiered structure that is based on when consumers provide notice of unauthorized EFTs to their banks:

a. First, when consumers notify banks of unauthorized EFTs within two business days of discovering the EFTs, their losses are capped at $50 or less, and banks must reimburse anything above $50. 15 U.S.C. § 1693g(a).

b. *Second*, when consumers notify banks of unauthorized EFTs within sixty days of discovering the EFTs, their losses are capped at $500, but only if banks prove that those losses would not have occurred had consumers reported the unauthorized EFTs within two business days rather than sixty. 15 U.S.C. § 1693g(a).

c. *Third*, when consumers do not notify banks of unauthorized EFTs within 60 days of discovery the EFTs, their losses are not capped, but only if banks prove that those losses would not have occurred had consumers reported the unauthorized EFTs within sixty business days rather than later. 15 U.S.C. § 1693g(a).

18. The EFTA and Reg. E also require banks to disclose the terms and conditions that apply to EFTs in readily understandable language. 15 U.S.C. § 1693c(a); 12 C.F.R. § 1005.4.

19. Consumer protections in the EFTA and Reg. E, including for unauthorized EFTs, cannot be waived or limited by any agreement, including consumers' deposit agreements, online account agreements, or fund transfer agreements with their banks. 15 U.S.C. § 1693l.

20. The practical result of the EFTA and Reg. E is that banks bear the bulk

of losses when consumers' funds are lost due to scammers' large-dollar, unauthorized EFTs. Banks thus are incentivized to prevent unauthorized access to consumers' bank accounts through online or mobile channels, thereby fostering consumer confidence in the electronic banking system.

## V. THE UNAUTHORIZED TRANSFERS

21. On or about November 4, 2025, Plaintiff received an email that appeared to originate from Norton Antivirus indicating that payment was required for a subscription.

22. Believing the email to be legitimate, Plaintiff called the telephone number provided in the email and disputed the purported charge. The individual who answered represented that the Norton account would be discontinued.

23. Plaintiff did not provide the caller with login credentials, remote access to his computer, or authorization to access or transfer funds from Plaintiff's Citibank Accounts.

24. Later that same day, Plaintiff received a telephone call from the same individual claiming that $100,000 had been mistakenly transferred into Plaintiff's Bank Accounts and that the funds needed to be returned.

25. Upon reviewing his Citibank Accounts, Plaintiff observed that on or about November 4, 2025, $100,000 was debited from Plaintiff's Citibank Savings Account by unknown person(a) and transferred to Plaintiff's Citibank Checking Account.

26. On or about November 4, 2025, $49,500 was debited from Plaintiff's Citibank Checking Account by unknown recipients and transferred to an individual identified as "Shane Richard."

27. On or about November 4, 2025, $50,000 was also debited from Plaintiff's Citibank Checking Account by unknown recipients and transferred to an individual identified as "Willie Ann Billington."

28. Prior to November 4, 2025, Plaintiff was not aware of the circumstances relating to the debit of funds from Plaintiff's Citibank Accounts on November 4, 2025, by Shane Richard and Willie Ann Billington.

29. Plaintiff does not know these individuals and did not authorize either transfer.

30. Plaintiff did not provide Shane Richard and Willie Ann Billington with consent to debit funds from Plaintiff's Citibank Accounts on November 4, 2025.

31. Plaintiff did not provide Defendant with consent for Shane Richard and Willie Ann Billington to debit funds from Plaintiff's Citibank Accounts on November 4, 2025.

32. Prior to November 4, 2025, Plaintiff was not aware that $100,000.00 would be transferred away from Plaintiff's Citibank Savings Account and into Plaintiffs Citibank Checking Account.

33. Prior to November 4, 2025, Plaintiff was not aware that $99,500.00 was to be debited from Plaintiff's Citibank Accounts by Shane Richard and Willie Ann Billington, as delineated above.

## COUNT I – VIOLATIONS OF THE EFTA

34. On November 4, 2025, Plaintiff provided Defendant with notice that he disputed the debit of funds by Shane Richard and Willie Ann Billington relative to Plaintiff's Citibank Accounts on November 4, 2025.

35. On November 4, 2025, Plaintiff provided Defendant with notice that he disputed the transfer of funds from Plaintiff's Citibank Savings Account and into Plaintiff's Citibank Checking Account on November 4, 2025.

36. On November 4, 2025, Plaintiff provided Defendant with information to allow Defendant to identify Plaintiff's Citibank Accounts, such as:

a. Plaintiff's Citibank Accounts number;

b. Plaintiff's personal identifying information;

c. The name under which Plaintiff's Citibank Accounts were registered;

d. The date of the transactions which Plaintiff disputed relative to Plaintiff's Citibank Accounts; and

e. The amount of the transactions which Plaintiff disputed relative to Plaintiff's Citibank Accounts.

37. On November 4, 2025, Plaintiff provided Defendant with notice that an error was contained on the aforesaid monthly account relative to the transfer of funds from Plaintiff's Citibank Savings Account and into Plaintiff's Citibank Checking Account

38. On November 4, 2025, Plaintiff provided Defendant with notice that the transfer of funds from Plaintiff's Citibank Savings Account and into Plaintiff's Citibank Checking Accoun was an unauthorized transfer of funds.

39. On November 4, 2025, Plaintiff provided Defendant with notice that the debit of funds by Shane Richard and Willie Ann Billington relative to Plaintiff's Citibank Accounts on November 4, 2025, were unauthorized electronic transfer of funds from Plaintiff's Citibank Accounts.

40. On November 4, 2025, Plaintiff informed Defendant that he did not provide Shane Richard and Willie Ann Billington with consent to debit funds from Plaintiff's Citibank Accounts on November 4, 2025.

41. On November 4, 2025, Plaintiff provided Defendant with notice of the circumstances as to why Plaintiff believed the debit of funds by unknown recipients on November 4, 2025, was carried out in error, such as:

a. Plaintiff never authorized the debit of funds from Plaintiff's Citibank Accounts;

b. Plaintiff never provided unknown recipients with permission, consent or authority to debit funds from Plaintiff's Citibank Accounts; and

c. Plaintiff did not know the recipients and did not perform any business or transactions with them;

d. Plaintiff had a caller attempt to scam him into transferring the funds out of the account himself.

42. Defendant failed to complete its investigation relative to the error complained of by Plaintiff within ten (10) business days of the receipt of Plaintiff's dispute in violation of 15 U.S.C. §1693f(a).

43. On December 2, 2025, Defendant issued a response to Plaintiff's dispute stating that it was denying the dispute on the basis that the transfers were authorized by Plaintiff. Defendant further stated that it had attempted to recall the funds from the beneficiary accounts, but that the accounts had already been emptied.

44. Prior to December 2, 2025, Defendant did not provide a provisional credit within ten (10) days of the receipt of Plaintiff's dispute in violation of 15 U.S.C. §1693f(c), leaving Plaintiff without the use of his funds while Defendant investigated the error.

45. In Defendant's response to Plaintiff's dispute over the unauthorized transfers from his accounts, Defendant advised Plaintiff that he may request reproduction of all of the documents which the Defendant utilized in coming to its conclusion that an error did not occur.

46. Plaintiff did request reproduction of all of the documents which the Defendant utilized in coming to its conclusion that an error did not occur.

47. To date, Defendant has not provided any documentation or information which the Defendant utilized in coming to its conclusion that an error did not occur leaving Plaintiff without the knowledge and information and the ability to get the information that explained why the transactions Plaintiff claimed were not authorized, were ostensibly authorized, in violation of 15 U.S.C. §1693f(d).

48. Defendant's investigation was not made in good faith and Defendant did not have a reasonable basis for denying the return of Plaintiff's funds in violation of 15 U.S.C. §1693f(e)(1).

49. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such a conclusion could not have been reasonably drawn from the evidence available to Defendant at the time of its investigation in violation of 15 U.S.C. §1693f(e)(2).

50. Defendant violated the Electronic Funds Transfers Act by holding Plaintiff liable for in excess of $50 on the aforementioned unauthorized transfers and has failed to refund the money into his account in violation of 15 U.S.C. §1693g(a).

51. Presently, Plaintiff remains without the $99,500 debited by Shane Richard and Willie Ann Billington from Plaintiff's Citibank Accounts.

52. Plaintiff is neither legally responsible or obligated to pay the $99,500 debited by Shane Richard and Willie Ann Billington from Plaintiff's Citibank Accounts.

53. As a result of Defendant's violations as aforesaid, Plaintiff has suffered and continues to suffer mental anguish and emotional distress and out-of-pocket damages.

WHEREFORE, Plaintiff, GEORGE PIAZZA, by and through his attorneys, respectfully prays for an award to be entered in favor of Plaintiff and against Defendant as follows:

a. All actual compensatory damages suffered;

b. Statutory damages allowable under 15 U.S.C. §1693m(a)(2)(A);

c. Treble damages allowable under 15 U.S.C. §1693f(e);

d. Plaintiff's attorneys' fees and costs; and,

e. Any other relief deemed appropriate by the arbitrator.

**COUNT II – VIOLATIONS OF THE UNIFORM COMMERCIAL CODE, ARTICLE 4A**

54. Plaintiff realleges each preceding paragraph as though fully set forth herein.

55. Uniform Commercial Code (U.C.C.) §4A-201 provides a security procedure as an "established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication.

56. Defendant's security procedures provided to its customers provides: "*When we receive a request for a funds transfer, we will follow a security procedure established for the protection of your account to verify that the transfer has been properly authorized. This procedure varies based upon whether we receive a funds transfer request in person, by phone, or through a digital channel and may entail use of additional user identification such as biometrics, password or authorization code. Citi will consider any funds transfer request made with this information to be duly authorized.*"

57. Upon information and belief, no other security procedures are established until the customer initiates its first wire transfer.

58. Prior to November 4, 2025, Plaintiff had never made any previous wire transfers and therefore have not created a security procedure.

59. Plaintiff and Defendant have not made any other good faith agreements on any other security procedures.

60. Defendant did not follow any agreed upon security procedures prior to allowing the execution of the aforesaid transfers of funds from Plaintiff's Citibank Checking Account.

61. Defendant did not accept any payment order from the Plaintiff in good faith and in compliance with the security procedure of Defendant.

62. U.C.C. §4A-202(a) provides that a payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.

63. At no time was any payment order authorized by Plaintiff.

64. Plaintiff was not bound to make any payment on behalf of any agent or employee, and was not otherwise bound to make any payment under the law of agency.

65. Pursuant to 815 ILCS 5/2-204, if a receiving bank (Defendant) accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 4A-202, or (ii) not enforceable, in whole or in part, against the customer under Section 4A-203, the bank shall refund any payment of the payment order received from the customer to the

extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

66. Plaintiff seeks a refund of the aforementioned wire transfer in the amount of $99,500.00 as the transfer was not authorized or effective against Plaintiff and is not enforceable against Plaintiff

67. Any payment instruction to Defendant purporting to instruct a payment from Plaintiff's Account would erroneously instruct payment to an unintended beneficiary, and therefore Plaintiff is not obliged to pay the order under U.C.C. §4A-205(a)(2).

68. Plaintiff has been damaged by being left without his funds as a result of Defendant's violations of the U.C.C. and holding Plaintiff liable for the erroneous and unauthorized payments in the amount of $99,500.00.

WHEREFORE, Plaintiff prays for judgment in his favor for all actual and compensatory damages recoverable.

## VI. JURY DEMAND

69. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**GEORGE PIAZZA**

By: s/ David M. Marco
Attorney for Plaintiff

Dated: November 3, 2026

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Court
Sarasota, FL 34240
**Telephone:** (312) 546-6539
**Facsimile**: (888) 418-1277
**E-Mail**: dmarco@smithmarco.com